**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

MELISSA RIDGEL,      )
           )
  Plaintiff,      )
           )
v.           )  Case No. CIV-25-684-D
           )
CORPORAL KORBIN TAYLOR  )
WILLIAMS, in his individual capacity, et al., )
           )
  Defendants.     )

## ORDER

Before the Court is Defendant Korbin Williams' Motion to Dismiss and Brief in Support [Doc. No. 22], filed pursuant to FED. R. CIV. P. 12(b)(6). Plaintiff filed a response [Doc. No. 23], to which Defendant Williams filed a reply [Doc. No. 24]. The Court also addresses Defendant City of Shawnee's Motion to Dismiss and Brief in Support [Doc. No. 6], filed pursuant to FED. R. CIV. P. 12(b)(6). Plaintiff filed a response in opposition [Doc. No. 13], to which the City of Shawnee (the City) filed a reply [Doc. No. 14]. These matters are fully briefed and at issue.

## BACKGROUND

On October 3, 2023, Defendant Corporal Korbin Williams, an officer with the Shawnee Police Department, initiated a high-speed pursuit with a car after the driver, Cory Burns, failed to yield to Defendant Williams' emergency lights. The pursuit exceeded 120 miles per hour, but ended when another car collided with the fleeing vehicle in the middle of an intersection.

1

Plaintiff was a passenger in Ms. Burns' car and sustained injuries as a result of the collision. She brings claims pursuant to 42 U.S.C. § 1983 against Defendant Williams and the City. As to Defendant Williams, she alleges his conduct in initiating and continuing the pursuit constituted excessive force in violation of her rights under the Fourth and Fourteenth Amendments. As to the City, Plaintiff alleges it failed to properly train and supervise its officers regarding high-speed pursuits and maintained policies or practices that permitted such conduct.

## STANDARD OF DECISION

In analyzing a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts "'accept as true all well-pleaded factual allegations in the complaint and view them in the light most favorable to the' plaintiff." *Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 878 (10th Cir. 2017) (quoting *SEC v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014)). "[T]o withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in the pleading, the court discusses the essential elements of each alleged cause of action to better "determine whether [the plaintiff] has set forth a plausible claim." *Id.* at 1192 (citation omitted).

A complaint fails to state a claim on which relief may be granted when it lacks factual allegations sufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (footnote and citation omitted). Bare legal conclusions in a

2

complaint are not entitled to the assumption of truth; "they must be supported by factual allegations" to state a claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## DISCUSSION

### I.    Corporal Korbin Taylor Williams

Plaintiff alleges that Defendant Williams violated her rights under the Fourth and Fourteenth Amendments in initiating and maintaining the high-speed pursuit. In response, Defendant Williams asserts he is entitled to qualified immunity.

"When a defendant raises the defense of qualified immunity, the plaintiff bears the burden to demonstrate that the defendant violated his constitutional rights and that the right was clearly established." *Callahan v. Unified Gov't of Wyandotte Cnty.*, 806 F.3d 1022, 1027 (10th Cir. 2015) (citing *Gross v. Pirtle*, 245 F.3d 1151, 1155-56 (10th Cir. 2001)). Courts "may decide which of these two prongs to address first, and need not address both." *Estate of Redd ex rel. Redd v. Love*, 848 F.3d 899, 906 (10th Cir. 2017).

Because qualified immunity is more than a defense to liability, the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (quotation omitted); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (quotation omitted) ("The *Twombly* standard may have greater bite in [§ 1983 cases], appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of a litigation."). "If qualified immunity is to mean anything, it must mean that public employees who are just doing their jobs are generally immune from suit." *Lewis v. Tripp*, 604 F.3d 1221, 1230 (10th Cir. 2010).

3

### A.    Fourth Amendment Claim

The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. CONST. amend. IV. "Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment." *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20-22 (1968)).

"[A] Fourth Amendment seizure [occurs] . . . when there is a governmental termination of freedom of movement through means intentionally applied." *Scott v. Harris*, 550 U.S. 372, 381 (10th Cir. 2007) (quoting *Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989)). The Supreme Court "held in *California v. Hodari D.*, 499 U.S. 621, 626 (1991), that a police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment." *County of Sacramento v. Lewis*, 523 U.S. 833, 843-44 (1998). Further,

> a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally *desired* termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

*Brower*, 489 U.S. at 596.

Plaintiff does not plausibly allege a seizure.[1] The Complaint alleges that Defendant Williams initiated a pursuit after Ms. Burns failed to yield to the emergency lights on his patrol car and fled. At some point during the pursuit, a third vehicle collided with Ms. Burns' car and Plaintiff, a passenger in the car, was injured. Plaintiff fails to plead any factual allegations that plausibly establish Defendant Williams applied physical force to her or intentionally caused the collision. *See Lewis*, 523 U.S. at 844 (holding that a vehicular police pursuit without physical force or submission does not constitute a seizure). Instead, she focuses on the continuation of the high-speed pursuit through a busy intersection.

In her response, Plaintiff contends that Defendant Williams "intentionally initiated and maintained" the pursuit and the resulting collision constituted a seizure. [Doc. No. 13, at 4]. But the Supreme Court has expressly rejected the proposition that a pursuit, without more, amounts to a seizure. *See Lewis*, 523 U.S. at 844. The Complaint contains no allegations that Defendant Williams made physical contact with Plaintiff or intentionally caused the collision as a means of terminating Plaintiff's movement. Because Plaintiff fails to sufficiently allege that she was seized within the meaning of the Fourth Amendment, she fails to state an excessive force claim against Defendant Williams.

---

[1] Plaintiff characterizes her claim as one for an "unreasonable search and seizure." [Doc. No. 1, at 5]. The allegations, however, involve only a police pursuit and the resulting collision, not any search of Plaintiff or her property. Accordingly, only the seizure component of the Fourth Amendment is implicated here.

5

### B.    Fourteenth Amendment Claim

"To establish a substantive due process violation, a plaintiff must show that the officers acted in a manner 'so egregious, so outrageous, that it may fairly be said to shock the contemporary conscious.'" *Ellis ex rel. Estate of Ellis v. Ogden City*, 589 F.3d 1099, 1101 (10th Cir. 2009) (quoting *Lewis*, 523 U.S. at 847 n.8). "[I]n the context of a high-speed police pursuit there must be evidence that the officers intended to 'harm the suspects physically or to worsen their legal plight' in order for their conduct to shock the conscience and therefore violate due process." *Id.* (quoting *Lewis*, 523 U.S. at 854). "[W]hen unforeseen circumstances demand an officer's instant judgment, even precipitate recklessness fails to inch close enough to harmful purpose to spark the shock that implicates 'the large concerns of the governors and the governed.'" *Lewis*, 523 U.S. at 853 (quoting *Daniels v. Williams*, 474 U.S. 327, 332 (1986)).

> In discussing the intent to harm standard, the Tenth Circuit has explained:
>
> The intent to harm standard is not limited to situations calling for split-second reactions. Rather, it applies whenever decisions must be made in haste, under pressure, and frequently without the luxury of a second chance. As the Eighth Circuit recently noted, the [intent to harm] standard most clearly applies in rapidly evolving, fluid, and dangerous situations which preclude the luxury of calm and reflective deliberation.

*Perez v. Unified Gov't of Wyandotte Cnty./Kan. City, Kan.*, 432 F.3d 1163, 1167 (citation and quotation omitted).

"However, 'when actual deliberation is practical,' [the court] will employ a 'deliberate indifference' standard." *Graves v. Thomas*, 450 F.3d 1215, 1221 (10th Cir. 2006) (quoting *Lewis*, 523 U.S. at 851). "When an officer is in a high-pressure situation

6

where time is of the essence, there must be evidence of a purpose to cause harm unrelated to the legitimate object of the arrest to satisfy the element of arbitrary conduct shocking to the conscience for a due process violation." *Ogden City*, 589 F.3d at 1102 (citing *Lewis*, 523 U.S. at 836).

Plaintiff's allegations do not plausibly meet this standard. Even accepting Plaintiff's factual allegations as true, they do not describe conduct undertaken with a purpose to cause harm. The Complaint alleges that Defendant Williams initiated and continued a high-speed pursuit after the driver fled. Plaintiff further alleges the pursuit reached speeds in excess of 120 miles per hour and continued through a major intersection before the collision occurred. But Plaintiff does not allege facts showing that Defendant Williams acted with a purpose to cause harm; such is insufficient as a matter of law. *See Lewis*, 523 U.S. at 854 (holding that a high-speed pursuit reaching speeds upwards of 100 miles per hour did not give rise to liability under the Fourteenth Amendment).

Plaintiff argues that a deliberate indifference standard should apply because Defendant Williams had time to deliberate before continuing the pursuit. [Doc. No. 13 at 5]. The Complaint, however, alleges that the pursuit began when the driver failed to yield and fled at high speed. [Doc. No. 1 at ¶ 9]. Plaintiff even refers to the situation as an "emergency." *Id.* These allegations describe a rapidly evolving situation requiring immediate judgment, not a scenario where actual deliberation is practical. Plaintiff alleges no facts suggesting that Defendant Williams paused, reconsidered, or otherwise had the opportunity for actual deliberation before continuing the pursuit. Her single allegation that Williams "had time to assess the risks of continuing a high-speed chase through a known

7

busy intersection and nevertheless chose to proceed" is merely a conclusory statement insufficient to establish a claim. *See Iqbal*, 556 U.S. at 678 (citation omitted) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Further, the Supreme Court and Tenth Circuit have routinely applied the intent to harm standard to high-speed police pursuits. *See Lewis*, 523 U.S. at 854.

Accordingly, the intent to harm standard governs. And because Plaintiff alleges no facts supporting an inference that Defendant Williams acted with such intent, her Fourteenth Amendment claim fails.

For the reasons set forth herein, Plaintiff fails to allege facts showing that Defendant Williams' conduct violated her constitutional rights under the Fourth and/or Fourteenth Amendments. Because Plaintiff has not met the first portion of the two-pronged test regarding qualified immunity, the Court finds that Defendant Williams is entitled to qualified immunity. *See Cummings v. Dean*, 913 F.3d 1227, 1239 (10th Cir. 2019) (quoting *A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016)) ("[I]f the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense.").

## II.    City of Shawnee

Plaintiff asserts a claim pursuant to 42 U.S.C. § 1983 against the City based on Defendant Williams' alleged conduct. "A plaintiff suing a municipality under section 1983 for the acts of one of its employees must prove: (1) that a municipal employee committed a constitutional violation, and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation." *Myers v. Okla. Cnty. Bd. of Cnty. Comm'rs*, 151

8

F.3d 1313, 1316 (10th Cir. 1998) (quoting *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). "[T]here can be no municipal liability—and thus no *Monell* claim— without an underlying constitutional violation." *Morphew v. Chaffee Cnty., Colo.*, 172 F.4th 802, 817 (10th Cir. 2026) (citing *Collins v. City of Harker Heights*, 503 U.S. 115 (1992)).

The City moves to dismiss Plaintiff's claim against it on two grounds. First, it argues Plaintiff fails to allege facts establishing a constitutional violation arising from the pursuit. [Doc. No. 6 at 4]. Second, it contends Plaintiff fails to allege the existence of a municipal policy or a causal link between any such policy and her injuries. *Id*. Plaintiff responds that dismissal is premature because her allegations plausibly state constitutional violations and that the existence and adequacy of municipal policies present fact questions inappropriate for resolution at the pleading stage. [Doc. No. 13 at 1-2].

As discussed above, the Court finds that Plaintiff has failed to allege facts that, if taken as true, plausibly state a claim for a constitutional violation under the Fourth and/or Fourteenth Amendments against Defendant Williams. Accordingly, because Plaintiff fails to plausibly establish a constitutional violation, her claim against the City fails under *Monell*.

## III.     Leave to Amend

The Court finds that Plaintiff's claims against Defendant Williams and Defendant City should be dismissed. The Court further finds that Plaintiff need not be granted leave to amend her pleading at this time.[2]

### CONCLUSION

**IT IS THEREFORE ORDERED** that the Defendant City of Shawnee's Motion to Dismiss and Brief in Support [Doc. No. 6] and Defendant Korbin Williams' Motion to Dismiss and Brief in Support [Doc. No. 22] are **GRANTED**. Plaintiff's claims against Defendant Williams and the City are **DISMISSED** without prejudice.

**IT IS SO ORDERED** this 29th  day of May, 2026.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[2] "Where a plaintiff does not move for permission to amend the complaint, the district court commits no error by not granting such leave." *Burnett v. Mortg. Elec. Regis. Sys., Inc.*, 706 F.3d 1231, 1238 n.4 (10th Cir. 2013). A district court may properly require a plaintiff to file a motion that complies with FED. R. CIV. P. 15(a) and LCvR15.1 before considering whether to allow an amendment. *See Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1283 (10th Cir. 2021); *see also Hall v. Witteman*, 584 F.3d 859, 868 (10th Cir. 2009) (finding that plaintiff "must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment"). In this case, the scheduling order to be entered pursuant to FED. R. CIV. P. 16(b)(1) will establish a deadline for motions to amend pleadings.